

U.S. Department of Justice

**FILED**
**U.S. DISTRICT COURT**
**DISTRICT OF MARYLAND**

2009 MAY 28  P 3: 53

United States Attorney
District of Maryland
Northern Division

CLERK'S OFFICE
BALTIMORE

BY _____ DEPUTY

Rod J. Rosenstein
United States Attorney

Jonathan Biran
Assistant United States Attorney

36 South Charles Street
Fourth Floor
Baltimore, Maryland 21201

410-209-4800
TTY/TDD:410-962-4462
410-209-4920
FAX 410-962-3091

May 18, 2009

Steven F. Wrobel, Esq.
Rosenberg Martin Funk Greenberg, LLP
25 South Charles Street, Suite 2115
Baltimore, MD 21201

    Re: *United States v. James E. Jackson*, Crim. No. WMN-09-0126

Dear Mr. Wrobel:

    This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to James E. Jackson (the "Defendant") by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by May 18, 2009, at 5:00 p.m., it will be deemed withdrawn. The terms of the agreement are as follows:

### Offenses of Conviction

    1.    The Defendant agrees to plead guilty to Counts 18, 19, and 20 of the Indictment now pending against him, which charge him with making false statements in a matter within the jurisdiction of the National Security Agency, in violation of 18 U.S.C. § 1001. The Defendant admits that he is, in fact, guilty of these offenses and will so advise the Court.

*Steven F. Wrobel, Esq.*
*May 18, 2009*
*Page-2*

## Elements of the Offenses

2. The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

1. The Defendant made a statement or representation.
2. The statement or representation was material.
3. The statement or representation was false, fictitious, or fraudulent.
4. The false, fictitious, or fraudulent statement was made knowingly and willfully; and
5. The statement or representation was made in a matter within the jurisdiction of the executive branch of the Government of the United States.

## Penalties

3. The maximum sentence provided by statute for each offense to which the Defendant is pleading guilty is as follows: five years of imprisonment, a $250,000 fine, and three years of supervised release. In addition, the Defendant must pay $300 as special assessments pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. The Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise, as contemplated in the following paragraph.

If the Defendant appeals the Court's denial of his motion to dismiss the indictment, as discussed in paragraph 11 below, the parties will recommend that the Court order the Defendant to begin making monthly restitution payments in the month immediately following the date that the Court of Appeals issues the mandate in the Defendant's appeal (should the Court of Appeals affirm the judgment of conviction). If the Defendant elects not to appeal the denial of his motion to dismiss the Indictment, the parties will recommend that the Defendant's monthly restitution payments begin in the month immediately following the date of the Defendant's release from the custody of the Bureau of Prisons, or, if the Defendant receives a sentence that does not include a term of imprisonment, in the month immediately following the date that the Court enters the restitution order.

The Defendant understands that if he serves a term of imprisonment, is released on

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

*Steven F. Wrobel, Esq.*
*May 18, 2009*
*Page-3*

supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

<u>Waiver of Rights</u>

4. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

a. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

d. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

e. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions, except as provided in paragraph 11 below.

*Steven F. Wrobel, Esq.*
*May 18, 2009*
*Page-4*

  f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in paragraph 11 below, to appeal his conviction and sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

  g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

  h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status.

## Advisory Sentencing Guidelines Apply

  5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

  6. This Office and the Defendant understand, agree, and stipulate to the Statement of Facts set forth in Attachment A hereto, which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

Base Offense Level: The parties agree that the base offense level is 6 under U.S.S.G. § 2B1.1(a)(2).

Loss: This Office may argue that an increase of 8 levels under U.S.S.G. § 2B1.1(b)(1)(E) is warranted because the loss was greater than $70,000, but not greater than $120,000. The Defendant may argue that an increase of 6 levels is appropriate because the loss was greater than $30,000, but not greater than $70,000.

Acceptance of Responsibility: This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office may oppose *any* adjustment for acceptance of

*Steven F. Wrobel, Esq.*
*May 18, 2009*
*Page-5*

responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty except as permitted under Fed. R. Crim. P. 11(a)(2).

Grouping of Closely Related Counts: The parties agree that the three counts of conviction should be grouped into a single Group.

Total Offense Level: Assuming that the Defendant receives credit for acceptance of responsibility, the Defendant's Total Offense Level will be either 10 or 12, depending on the Court's resolution of the disputed issue of loss.

7. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

8. Except as specified in paragraph 6 above, this Office and the Defendant agree that, with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures, or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute. The Defendant may argue for a variance sentence under 18 U.S.C. § 3553(a). If the Defendant intends to argue for a variance sentence, he will file a sentencing memorandum at least 10 days prior to the sentencing hearing setting forth all his arguments for a variance. This Office may oppose the Defendant's request for a variance sentence.

## Obligations of the United States Attorney's Office

9. At the time of sentencing, this Office will recommend a sentence within the applicable advisory guidelines range. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

10. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including the conduct that is the subject of the counts of the Indictment that this Office has agreed to dismiss at sentencing.

*Steven F. Wrobel, Esq.*
*May 18, 2009*
*Page-6*

### Conditional Plea/Waiver of Appeal

11. The Defendant's guilty plea to Counts 18, 19, and 20 of the Indictment is a conditional plea under Fed. R. Crim. P. 11(a)(2). Specifically, the Defendant reserves the right to appeal the Court's order denying his motion to dismiss the indictment. This Office consents to this conditional guilty plea. The Defendant agrees that he will not appeal his conviction on any other ground. Further, the Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed, including any fine, term of supervised release, or order of restitution and any issues that relate to the establishment of the advisory guidelines range, as follows: the Defendant waives any right to appeal from any sentence within or below the advisory guidelines range resulting from a total offense level of 10, and this Office waives any right to appeal from any sentence within or above the advisory guidelines range resulting from a total offense level of 12. Nothing in this agreement shall be construed to prevent either the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), and appealing from any decision thereunder, should a sentence be imposed that is illegal or that exceeds the statutory maximum allowed under the law or that is less than any applicable statutory mandatory minimum provision. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Obstruction or Other Violations of Law

12. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge the conduct set forth in Attachment A to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

*Steven F. Wrobel, Esq.*
*May 18, 2009*
*Page-7*

## Court Not a Party

13. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

14. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

*Steven F. Wrobel, Esq.*
*May 18, 2009*
*Page-8*

      If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to us promptly.

                Very truly yours,

                Rod J. Rosenstein
                United States Attorney

            By: _____
                Jonathan Biran
                P. Michael Cunningham
                Assistant United States Attorneys

      I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

_18 MAY 09_
Date

                _____
                James E. Jackson

      I am James E. Jackson's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

_18 May 09_
Date

                _____
                Steven F. Wrobel, Esq.

*Steven F. Wrobel, Esq.*
*May 18, 2009*
*Page-9*

## ATTACHMENT A

### Statement of Facts

*This Office and the Defendant stipulate and agree to the following facts that the United States would have proved beyond a reasonable doubt had this case proceeded to trial. They further stipulate and agree that these are not all of the facts that the United States would have proven.*

At all times relevant to this case, the National Security Agency ("NSA") was a component of the U.S. Department of Defense, which was part of the executive branch of the United States Government. In or about July 2003, NSA contracted with Computer Sciences Corporation ("CSC") to obtain certain messaging services. CSC provided such services under the terms of a time-and-materials contract, contract number MDA904-03-A-0003, Delivery Order #0005 (the "Messaging Services Contract"). CSC entered into a subcontract with a division of Northrop Grumman Corporation ("NG") pursuant to which NG employees worked on the Messaging Services Contract. The Defendant was employed full-time by NG, and worked exclusively on the Messaging Services Contract. The Defendant's sole duty station with respect to the Messaging Services Contract was located within NSA Headquarters, Fort George G. Meade, Maryland, and the Defendant was required to be within NSA Headquarters when working on the Messaging Services Contract. The Defendant worked in NSA space under a grant of access by the NSA Associate Directorate for Security and Counterintelligence ("NSA Security"). Specifically, the Defendant was approved for contractor access to Sensitive Compartmented Information (SCI) by NSA Security's Adjudications Division.

NG required the Defendant to submit a timesheet in electronic form for every two-week pay period. In those timesheets, the Defendant was required to state the number of hours he had worked during those pay periods on the Messaging Services Contract. The Defendant received regular paychecks from NG in which he was paid, in part, based on the number of hours he had claimed to work on the Messaging Services Contract for the pay periods in question.

Based on the hours that the Defendant claimed in his timesheets to have worked on the Messaging Services Contract, NG periodically invoiced CSC for such hours. CSC, in turn, periodically invoiced NSA for the hours that the Defendant claimed to have worked on the Messaging Services Contract. After NSA received invoices from CSC, which included the amounts invoiced for hours the Defendant had reported to NG he had worked on the Messaging Services Contract, NSA paid CSC for such claimed hours at rates that were specified in the Messaging Services Contract. CSC, in turn, made payments to NG for the Defendant's claimed hours.

Between approximately September 30, 2004, and approximately January 16, 2007, the

*Steven F. Wrobel, Esq.*
*May 18, 2009*
*Page-10*

Defendant submitted, and caused to be submitted, false timesheets to NG claiming that he worked a total of approximately 834 hours more than he had actually worked on the Messaging Services Contract. CSC invoiced NSA for the hours the Defendant falsely claimed to have worked on the Messaging Services Contract. This led to NSA paying CSC for hours not worked by the Defendant. The Government contends that the overpayment for the Defendant's unworked hours was approximately $75,150. The Defendant disputes this amount, but acknowledges that the overpayment was between $30,000 and $70,000.

NSA did not learn of the Defendant's unworked hours until after NSA had already paid CSC for those hours, and after CSC in turn had already paid NG for such hours. If it had been determined that the terms of the Messaging Services Contract were not being met due to deficiencies related to an employee of NG, NSA's contracting officer would have worked directly with CSC's contracting office to determine how best to address the problem. If the problem with NG was not then remedied, NSA would have had the option of terminating the contract with CSC or could have demanded repayment from CSC for hours not actually worked by the Defendant. If an NSA auditor had received an allegation that the Defendant was not working the hours he was claiming in his timesheets, the auditor would have had the authority to obtain timesheets and billing records relating to the Defendant in order to determine the amount of overpayment so that NSA could seek to recoup that amount from CSC.

By the time NSA's Office of Inspector General began its investigation of the Defendant's timesheets, the Defendant was no longer working on the Messaging Services Contract due to a Reduction in Force on the contract in November 2006. If, at any time while the Defendant was working on the Messaging Services Contract, NSA Security had learned that the Defendant had not actually worked all the hours he had claimed in his timesheets to NG, NSA Security could have suspended or revoked the Defendant's access to NSA facilities and information. Had NSA Security taken such action, the Defendant would have been prevented from doing any more work on the Messaging Services Contract.

With respect to Counts 18, 19, and 20, the parties stipulate as follows: On or about the following dates, in the District of Maryland and elsewhere, the Defendant knowingly and willfully submitted materially false timesheets to NG for the following pay periods, in which he claimed that he had worked the following hours on the following dates on the Messaging Services Contract, when as he then well knew, he had not worked on the Messaging Services Contract for such hours:

*Steven F. Wrobel, Esq.*
*May 18, 2009*
*Page-11*

| Count | Date Timesheet Entered | Pay Period Ending Date | Hours Falsely Claimed to Have Been Worked |
|---|---|---|---|
| 18 | 7/6/06 | 7/6/06 | 8 hours (6/29/06)<br>8 hours (7/4/06) |
| 19 | 8/3/06 | 8/3/06 | 8 hours (7/27/06)<br>8 hours (8/1/06)<br>8 hours (8/2/06) |
| 20 | 8/17/06 | 8/17/06 | 2.25 hours (8/8/06)<br>8 hours (8/10/06)<br>4.25 hours (8/15/06)<br>8 hours (8/17/06) |

NG invoiced CSC for the above-listed falsely claimed hours, and CSC, in turn, invoiced NSA for such hours. NSA paid CSC for the above-listed falsely claimed hours. CSC, in turn, paid NG for those unworked hours.

I have reviewed the foregoing statement of facts with my attorney, understand it, agree with it, and do not wish to change any part of it. I further understand that it is included as part of my plea agreement with the government in this case.

_____   18 MAY 09
James E. Jackson                  Date

_____   18 May 09
Steven F. Wrobel, Esq.            Date